# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WEI LY, | Civil Action No. 2: 13-cv-01102 |
| Plaintiff, | |
| v. | United States District Magistrate Cynthia Reed Eddy |
| AMY VARNER, JANE HEIDE, AND LEO GLASS, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Presently pending is the Motion for Summary Judgment filed by Defendants, Amy Varner, Jane Heide,[1] and Leo Glass, with brief in support (ECF Nos. 43 and 44), and the brief in opposition filed by Plaintiff, Wei Ly (ECF No. 52). The issues have been fully briefed and the factual record has been developed. *See* ECF Nos. 45, 46, 49, 50, 51, 53, and 54.

After careful consideration of the motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that the motion should be granted in part and denied in part.[2]

### Procedural Background

Plaintiff, Wei Ly ("Plaintiff" or "Ly"), is a state prisoner currently incarcerated at the State Correctional Institution ("SCI") at Somerset. Ly brings this action seeking compensatory and punitive damages arising from an incident that took place while he was incarcerated at his

---

[1] Although identified in the caption and complaint as "Jane Heide," Billie Heide was the Deputy Superintendent for Centralized Services of SCI-Greensburg. *See* ECF No. 46-3.

[2] All parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* 28 U.S.C. § 636 et seq.; Consent to Trial / Jurisdiction by United States Magistrate Judge (ECF Nos. 9, 14, and 16).

1

former place of confinement, SCI-Greensburg.[3] Specifically, Ly's complaint alleges that Defendants failed to protect him from the attack of his cell mate, Inmate John Abrams ("Abrams"). As a result of the assault, Ly contends that he has trouble sleeping, has anxiety problems, and suffers from headaches. Ly brings his claims under 42 U.S.C. §1983 and state law negligence.

Defendants argue that they are entitled to summary judgment as the record does not establish that they were aware of any issues between Ly and Abrams that would require their intervention. Ly argues that there are material facts in dispute that warrant the denial of summary judgment. While the Court agrees with Plaintiff, Defendants' arguments warrant a brief analysis.

**Standard of Review**

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Ind. Co. v. Zenith Radio*

---

[3] SCI-Greensburg, closed since June 2013, was a medium-security level male correctional institution. Several of the housing units, including the unit Ly was housed in, consisted of dormitory-style housing rather than traditional prison cells.

*Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting *Anderson*, 477 U.S. at 251–52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. *Anderson*, 477 U.S. at 249–50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 324.

**Discussion**

A.  <u>Eighth Amendment – Failure to Protect Claims[4]</u>

The Eighth Amendment requires prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1944) (internal quotation omitted). To establish a failure-to-protect claim, a prisoner must show that: (i) he is "incarcerated under conditions posing a substantial risk of serious harm" and (ii) prison officials acted with "deliberate indifference" – "that is, they knew of and disregarded an excessive risk to his safety." *Freeman v. Miller*, No. 14-1680, 2015 WL 3794657 at *2 (3d Cir. June 18, 2015) (citing *Farmer*, 511 U.S. at 833)). "[I]n determining whether a prison official has shown deliberate indifference to inmate health or safety, [a court] must look to what a prison official actually knew rather than to what a reasonable official in his or her position should have known."

---

[4]  In his complaint, Plaintiff sued Defendants in their individual and official capacities. By Memorandum Opinion and Order of June 30, 2014 (ECF No. 28), the Court dismissed all official capacity claims against Defendants. To the extent that Plaintiff brought claims against the Defendants in their individual capacities, however, those claims remained viable.

3

*Serafin v. City of Johnstown*, 53 F. App'x 211, 214 (3d Cir. 2002). Not only must a prison official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but the official "must also draw the inference." *Farmer*, 511 U.S. at 837. A prison "official who knows of a risk to a prisoner can avert liability if he shows that he acted reasonably, even if injury still occurred." *Freeman,* 2015 WL 3794657 at *2 (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001)). "Not every prisoner-inflicted injury, however, amounts to a constitutional violation." *Id. See also Bistrian v. Levi*, 696 F.3d 35, 367 (3d Cir. 2012) (noting failure-to-protect § 1983 claim also requires showing that the official's deliberate indifference caused the prisoner harm).

The following facts are undisputed. On May 8, 2012, at approximately 9:00 AM, Abrams tried to touch Ly's genital area while Ly was naked in the shower. Abrams had on a T- shirt and shorts. *See* ECF 46-3, Report of John A. Beers. Ly fended off the sexual assault by pushing Abrams away and both men fell to the floor. Another inmate told them to break it up as "the officer was looking around." *Id.* Both Ly and Abrams then left the shower area and returned to the cubicle which they shared. While Ly was trying to get dressed, Abrams approached him from behind and began punching him.

Both Ly and Abrams were examined by the medical department. It was noted that Ly had numerous scratches to his back and right side[5] and that Abrams had no injuries.

Ly was placed in Administrative Custody ("AC") pending completion of the investigation of the incident. On May 8 and 9, 2012, an investigation into the incident was conducted by Security Lieutenant John A. Beers ("Beers"), who interviewed Varner, Ly, Abrams, and four (4) unnamed additional inmates. Beers concluded, *inter alia*, that

---

[5] In his deposition Ly states he also injured his foot.

> Inmate LY was preyed upon by inmate [Abrams]. Inmate LY was attacked by inmate [Abrams] while in the shower room of JB unit. Inmate LY protected himself. Inmate [Abrams] was the aggressor in this reported assault. He tried to pressure inmate LY into performing sexual acts.
>
> . . .
>
> I recommend that inmate [Abrams] receive an (sic) misconduct for assault and that a separation be filed on both inmate LY and inmate [Abrams] to prevent any retaliation or further incidence.

ECF No. 46-3 at 48.

On May 9, 2012, the day after the attack, Ly was released from AC and returned to general population, where he was placed on Unit 3, JB 56. *See* ECF No. 46-1. On June 22, 2012, Ly's request for "self-confinement" was granted and he was returned to AC. It was reported Ly stated that he feared for his safety and that staff would not be able to protect him should another incident happen. *Id.* On August 3, 2012, Ly was transferred from SCI-Greensburg to SCI-Somerset, where he was returned to general population.[6] *See* ECF No. 46-1.

The evidence is disputed whether Ly made any complaints to Defendants which conveyed to them a specific threat of harm. In his investigative report, Lieutenant Beers wrote, in pertinent part, that Defendant Varner stated that Ly

> came to her a couple of times a couple of weeks ago requesting to be moved . . . Miss Varner asked Inmate LY if he was having any problems. LY responded that he was having issues with a cell mate, but never reported that he was being sexually pressured by inmate Abrams.

*See* ECF No. 46-3, Report of Beers. In a written statement prepared at the time of her interview on May 8, 2012, Varner stated that she

---

[6] The summary judgment record reflects that while at SCI-Somerset, Ly continually has been housed in general population with the exception of the limited time period from September 27, 2012, through July 13, 2013, when he was housed in the Special Needs Unit at SCI-Somerset. *See* ECF No. 46-1.

5

> told Lt. Beers that Inmate Ly had requested to move out of his cube and [she] had offered to move him twice. [She] had asked him why he wanted to move from his premium bed / cube to a much less preferred bed / cube and he never implicated Abrams as a sexual predator against him.

*Id.* Defendants Heide and Glass argue that there is no indication in the record that they were aware of any issues between Ly and Abrams that would have required their intervention as Ly never conveyed to them a specific threat of harm.

Plaintiff counters these arguments by alleging that he submitted Inmate's Request to Staff Member Forms, dated May 2, 2012, directed to each of the Defendants. The Inmate's Request to Varner stated: "Say that I have a problem with a inmate (Mr. Abrams). I am living with him I am being pressured in his homosexual ways. I like to switch from 45 JB to 42 JA. Thank you." *See* ECF Nos. 46-3, at 8; 54-1 at 2. The Inmate's Requests to Heide and Glass contained identical messages: "I have a problem with a inmate (Mr. Abrams) I am living with him I am being pressured in his homosexual ways. I need to move as soon as possible. I like to switch from 45 JB to 42 JA. Thank you." *See* ECF Nos. 46-3 at 16, 22; 54-2 at 2; 54-3 at 2.[7] Ly also argues that he verbally told Varner on May 7, 2012, that he had a problem with Abrams and requested to move.

Defendants respond that they never saw the Inmate's Request to Staff Member Forms because these Inmate's Requests were never received in the Superintendent's office. Had they been received, according to Defendants, the Inmate's Requests would have been time stamped

---

[7] The summary judgment record also has a copy of an Inmate's Request form to Staff Member, dated May 12, 2012, addressed to Defendant Heide, in which Ly states as follows: "On March (sic) 8, 2012, I was sexually assaulted in the shower. I had to defend myself. I was sent to the R.H.U. I was released on the 9th of May. Before the incident occured I wrote Ms. Varner a request slip dated the 2nd of May. Requesting to move from this homosexual. I needed to move from JB to JA. . . . I am stating that I did not recieve the request slips back saying that I needed to move. Thank you." ECF No. 27-1.

indicating receipt, and then reviewed and assigned for response. None of the Inmate's Request forms produced by Ly have a time stamp. Further, Defendant Varner contends that had she received the Inmate's Request, she would have reported it to the Security Office and taken immediate steps to separate the inmates. *See* ECF No. 46-3 at 5. Defendant Heide contends that had she received the Inmate's Request, she would have contacted Ly's Counselor and Unit Manager to inquire about the situation and then, if appropriate, would have reported it to the Security Office and taken immediately steps to separate the inmates. *See* ECF No. 46-3 at 14. Likewise, Defendant Glass contends that had he received the Inmate's Request, he would have reported it to the Security Office and taken immediate steps to separate the inmates. *See* ECF No. 46-3 at 19-20.

The Court finds that Ly has met his burden of showing that there is a genuine issue for trial. It is not beyond reason for a fact-finder to find that Ly submitted these Inmate's Request Forms to the Superintendent's office. It is also not beyond reason to conclude the opposite. This, however, is a factual dispute and it is not for the Court to usurp the role of the jury and decide this issue.

There is also disputed evidence surrounding whether Ly's written statement prepared on May 9, 2012, was coerced and whether Ly's withdrawal of Grievance No. 412581 was also coerced. Ly's written statement, prepared on May 9, 2012, states in pertinent part, "I went to my unit manager to be moved because I had a problem but didn't tell her the reason why, I didn't report the incident to her." According to Ly, both Intelligence Captain Sean L. Nose and Lieutenant Beers were present during his interview, and Captain Nose told him that he could not leave the interview room until Ly stated that he did not tell Varner the reason why he wanted to move. Beers has provided a Declaration wherein he asserts that the statements he took from Ly

7

were made voluntarily and without threat or coercion and that Beers was the only person that conducted interviews during this investigation. *See* ECF No. 46-3 at 25.

Ly filed Grievance No. 412581 on May 16, 2012, in which he stated that he was "the victim of an attempted rape case which was the consequence of the lack of proper security on behalf of S.C.I. Greensburg." On May 22, 2012, Ly withdrew this grievance. *See* ECF No. 46-1 at 10. The summary judgment record reflects that the next day, May 23, 2012, Ly submitted an Inmate's Request to Staff Member addressed to Toni M. Colland in which he stated, "I wrote a grievance on May 16th and I felt pressured into signing the withdrawal form on the 22nd of this month. I want to take back the withdrawal. The officer who told me to sign it was Captain Nose. Thank you." The same day, Ly received the following response: "Your withdrawal was processed on 5-22-12 and the withdrawal cannot be 'taken back' once processed. Please refer to DC-ADM 804, Section 1.A.19. Toni M. Colland." These again are factual disputes and it is not for the Court to usurp the role of the jury and decide these issues.

Defendants also argue that Ly is not credible because he has provided a number of inconsistent statements and his allegations "appear to present a bit of a moving target." Defs' Br. at 4 n. 3. (ECF No. 44). Any alleged inconsistencies, however, weigh on Plaintiff's credibility that only a jury may consider.

Because it is clear that there are material facts in dispute, Defendants' motion for summary judgment on Plaintiff's Eighth Amendment failure-to-protect claims will be denied.

B. <u>Negligence claims</u>

Plaintiff also raises his Eighth Amendment claims addressed above as allegations of negligence under Pennsylvania law. Defendants argue that Ly's state law tort claims against them for negligence are barred by sovereign immunity.

8

The doctrine of sovereign immunity, which is codified at 1 Pa. Cons. Stat. Ann. § 2310, protects a state official from suit unless the cause of action falls within one of several statutory exceptions, which are set forth in 42 Pa. Cons. Stat. Ann. § 8522, or the individual's conduct falls outside the scope of the employee's employment. *See Johnson v. Townsend*, 314 F. App'x 436, 439 (3d Cir. 2008). Section 2310 provides, in pertinent part, as follows:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

1 Pa. Cons. Stat. Ann. § 2310. This grant of immunity "applies to Commonwealth employees in both their official and individual capacities, so long as the employees are acting within the scope of their duties" *Thomas v. Shutika*, 2014 WL 2514817 (M.D.Pa. 20140). Immunity only has been waived in nine narrow areas involving negligence, which are defined in 42 Pa. Cons. Stat. Ann. § 8522(b),[8] none of which are applicable here. Therefore, Ly's state law claims against Defendants are barred unless any of the Defendants were acting outside the scope of their employment during the events alleged in Ly's complaint.

Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not

---

[8] Section 8522 waives immunity in the following limited negligence categories: (1) Vehicle liability; (2) Medical-professional liability; (3) Care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) Potholes and other dangerous conditions; (6) Care, custody or control of animals; (7) Liquor store sales; (8) National Guard activities; (9) Toxoids and vaccines. 42 Pa. Cons. Stat. Ann. § 8522(b).

unexpectable by the employer. Restatement (Second) of Agency § 228; *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (stating that Pennsylvania Supreme Court has adopted the Restatement's definition of "within the scope of employment"). Ly does not allege that the acts of Defendants were committed outside the course and scope of employment, nor does anything in the summary judgment record support such an allegation. Accordingly, Plaintiff's state law claims that Defendants were negligent when they failed to protect him is barred by Pennsylvania's sovereign immunity statute.

## Conclusion

For all the foregoing reasons, the Motion for Summary Judgment will be granted in part and denied in part. An appropriate Order follows.

## ORDER

**AND NOW**, this 31st day of August, 2015,

It is hereby **ORDERED** that the Motion for Summary Judgment filed by Defendants is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The motion is **GRANTED** as to Plaintiff's negligence claims against Defendants; and

2. The motion is **DENIED** as to Plaintiff's Eighth Amendment failure to protect claims against Defendants.

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: **WEI LY**
JL-4217
1600 Walters Mill Road
Somerset, PA 15510
(via U.S. First Class Mail)

**Scott A. Bradley**
Office of the Attorney General
(via ECF electronic notification)